CARRIE S. WHEELER *vs.* LUCRETIA T. WHEELER.

A husband may make a valid gift of property to his wife, if it is bonâ fide and not prejudicial to creditors.

A husband purchased a horse, intending to make an immediate gift of it to his wife, who was with him, and he declared at the time that he bought it for her, and that it was hers. He however took it into his possession and kept it in his stable. Held that there was a sufficient delivery to make the gift a valid one.

The same change of possession was not necessary that would have been if he had previously owned the horse. The only possession that he ever had was that taken by him in her behalf.

TROVER for a horse; brought to the Court of Common Pleas of New London County, and tried to the court, upon the general issue, before *Mather, J.* The court found the following facts:

On the 23d of April, 1874, the plaintiff was married to Edwin C. Wheeler, then of Bozrah in this state, and on the same day started with him for Mount Carmel, in the state of New York, for the purpose of visiting a family named Powers who were residents of that place. They arrived at the house of Mr. Powers the next day and remained there about a week. While there, on the 27th of April, Mr. Wheeler bargained with Powers to buy of him the horse described in the plaintiff's declaration, for $190, and to give his note therefor payable in five months, intending to give the horse to the plaintiff.

After making the bargain, and on the same day, he told the plaintiff, in the presence of Powers, that he had bought the horse for her, and that it was hers.   On the 30th of April he gave his note for the horse to Powers, the latter agreeing to deliver the horse to him in the city of New York on the 4th of May.   Mr. and Mrs. Wheeler left Mount Carmel on the 30th of April and went directly to Charles Hinckley's, in Brooklyn, in the state of New York, and there remained on a visit until the afternoon of the 4th of May.   While there he told Hinckley that he had bought the horse for the plaintiff and had given it to her.   In the afternoon they left Hinckley's for their home in Bozrah by the way of New York city. During the same afternoon the horse arrived in that city and was there delivered to and received by Mr. Wheeler, and was by him immediately put on board the freight steamer bound for Norwich that night.   Mr. Wheeler and his wife took passage on board the passenger boat bound for Norwich the same night.   Both boats arrived at Norwich on the morning of May 5th.   On their arrival at Norwich they went immediately to his residence in Bozrah, and the horse was by his order taken by an employee of his to Bozrah and put in his barn there, with two other horses belonging to him which were kept for livery purposes, he being the keeper of a livery stable at that place.   The expense of shipping the horse to Norwich was paid by him.   The horse, after its arrival at Bozrah, was used but twice before Mr. Wheeler's death—once by him to take himself and the plaintiff to the plaintiff's father's in Bozrah, and once to carry a messenger for a physician for him.   Nothing was said by him to the plaintiff about the horse from the time they left Hinckley's, in Brooklyn, on the 4th of May, to the time he died, which was on the 11th of May following.

On the 24th of June, 1872, Mr. Wheeler executed a will, which remained unrevoked at the time of his death, by which he gave to the defendant, his mother, all his estate, real and personal, and appointed her his executrix.   The will was duly proved and an appraisal was made soon after, and the horse in controversy was included in the inventory.   The

defendant purchased of the plaintiff her right of dower in the real estate for the sum of $900 and took from her a deed of the same, and the court of probate, upon the application of the plaintiff, made an allowance to her of $500 out of the estate for her support during the settlement of the estate. The order making such allowance was appealed from and is now pending in the Superior Court.

The defendant paid the note given for the horse to Powers and paid the expenses of keeping the horse, until May, 1875, when she sold him.   On the 12th of April, 1875, the plaintiff, through the officer who served the writ in this case, demanded the horse of the defendant, who refused to deliver it.   Its value at the time the demand was made, was $175.   On the 21st of April, 1875, the defendant settled her administration account. In that account the $900 paid to the plaintiff for her dower, was charged against the estate.   The allowance of $500 was not charged.   The estate was settled as a solvent estate.

On the foregoing facts the plaintiff claimed title to the horse by gift from her husband, and that she was entitled to recover the value of it from the defendant, and requested the court so to rule : but the court refused so to rule.

The defendant claimed to have proved that, at the time the plaintiff claimed to have acquired title to the horse, Mr. Wheeler was so largely indebted that he could not make a valid gift of the horse to her.   On this part of the case the court found that he was largely indebted at the time, but that the value of his property, real and personal, exceeded the amount of his indebtedness.   The court however found that, as the estate now stood, without reference to the claim of the plaintiff, there was a balance in favor of the estate to the amount of $78.35, but that, adding the value of the horse to the charges against the estate, it would be insolvent.

The plaintiff further claimed that the defendant had no right to charge the $900 paid for her dower, to the estate, and that, upon the defendant's own showing, the estate was not insolvent.

Upon the foregoing facts the court ruled that there was no

delivery of the horse to the plaintiff, and rendered judgment for the defendant.

The plaintiff moved for a new trial for error in this ruling of the court.

*J. Halsey* and *S. T. Holbrook,* in support of the motion.

1. There was a sufficient delivery to constitute a perfect gift from husband to wife. *Deming* v. *Williams,* 26 Conn., 231; *Penfield* v. *Thayer,* 2 E. D. Smith, 305; *Allen* v. *Cowan,* 23 N. York, 502; *Martrick* v. *Linfield,* 21 Pick., 325; *Fish* v. *Cushman,* 6 Cush., 25; 8 Am. Law Reg., (Sep. 1860,) p. 759. The possession of the husband must be deemed the possession of the wife. Authorities *supra.* The gift being beneficial to the wife, her acceptance is presumed. *Treadway* v. *Hamilton Mut. Ins. Co.,* 29 Conn., 71; *Treat* v. *Treat,* 35 id., 210; Hill on Trustees, 214. There was no act on the part of the donor or donee after the gift, to the time of the death of the donor, that is inconsistent with the fact that both deemed the horse the property of the wife. In Connecticut the husband is the trustee of the personal property of the wife and holds the legal title, and is consequently entitled to possession. Hill on Trustees, 51, 384, 407; *Underhill* v. *Morgan,* 33 Conn., 108.

2. A valid trust of personal property may be created and established and proved by parol declarations. Hill on Trustees, 57, 88. Though the gift remains in possession of the donor. *Morgan* v. *Malleson,* L. Reps. 10 Eq. Cas., 475; 1 White & Tudor Lead. Cas. in Eq. (H. & W. ed.,) 307, 309, 313, 330; *Brinkerhoff* v. *Brinkerhoff,* 2 Sandf. Ch., 401; *Munchin* v. *Merrill,* 2 Edw. Ch., 333; *Minor* v. *Rogers,* 40 Conn., 512; 2 Story Eq. Jur., § 1380.

3. The court has found that the estate of the donor was not insolvent at the time of the gift. As fraud is neither found nor claimed the gift is valid against subsequent creditors. *Benton* v. *Jones,* 8 Conn., 186, 191; 1 Story Eq. Jur., §§ 357, 362, and note; 1 Am. Lead. Cas., 34.

*J. A. Hovey* and *J. M. Thayer,* contra.

Upon the facts found the court was correct in ruling that there was no gift to the plaintiff. A mere intention or naked promise to give, without some act to pass the property, is not a gift. Delivery is essential both at law and in equity to the validity of a parol gift of a chattel; and without actual delivery and transfer of possession, or some act equivalent thereto, the title does not pass. To establish a parol gift from a husband to his wife there must be a clear intention to give and an unambiguous act of delivery, and courts require clear, conclusive and uncontrovertible evidence as to both the intention and the fact. 1 Swift Dig., 439; 2 Kent Com., 438; Benjamin on Sales, § 2, note *f;* Williams on Pers. Prop., 35; *Irons* v. *Smallpiece,* 2 Barn. & Ald., 551; *Hinman* v. *Parkis,* 33 Conn., 188; *Noble* v. *Smith,* 2 Johns., 52; *Cook* v. *Husted,* 12 id., 188; *Grover* v. *Grover,* 24 Pick., 261; *Dole* v. *Lincoln,* 31 Maine, 422; *Hanson* v. *Millett,* 55 id., 184; *Hatch* v. *Atkinson,* 56 id., 324; *Cutting* v. *Gilman,* 41 N. Hamp., 151; *Bourne* v. *Fosbrook,* 18 Com. Bench, 515, and note; *Jennings* v. *Davis,* 31 Conn., 134; *Shuttleworth* v. *Winter,* 55 N. York, 624.

LOOMIS, J. As our law now stands it must be conceded that a husband may make a valid gift of personal property to his wife, if it is bonâ fide and not prejudicial to creditors. *Deming* v. *Williams,* 26 Conn., 226; *Jennings* v. *Davis,* 31 Conn., 134; *Underhill* v. *Morgan,* 33 Conn., 105.

Nothing appears in this case to impeach the bonâ fide character of the gift. It was made just after the marriage of the parties and while they were on their wedding tour, and the amount of property thus transferred to the wife was not unreasonably large. Neither can the gift be set aside on the ground that it was prejudicial to creditors. The finding is explicit that though the husband was at the time largely indebted, yet the value of his real and personal estate exceeded such indebtedness. And even as the estate now stands, after all the expenses of settling the estate, and after the probate court has allowed the defendant as executrix to charge in her administration account the sum of nine hundred dollars paid

by her in her private capacity to the plaintiff for her right of dower, there is still found to be a balance of $78.35, over all demands against the estate except the present claim.

The motion we think discloses very clear evidence of the intention on the part of the husband to have his wife become the absolute owner of the horse in question. It is found that he had that intent while negotiating for the purchase, and then immediately after the terms of sale were agreed upon and before he had given his note for the price, he told the plaintiff in the presence of Powers, the vendor, that he had bought the horse for her and that it was hers, and in Brooklyn, New York, at Hinckley's, where the horse was delivered, he told Hinckley that he had bought the horse for her and had given it to her.

But the defendant claims that the transaction lacks one element which is indispensable to its validity as a gift, to wit, delivery. And undoubtedly the rule is that where the subject matter admits of delivery, actual delivery or some act equivalent thereto is essential to constitute a valid gift by parol.

On this part of the case the defendant claims, in the first place, that the court below has found, as matter of fact, that there was no delivery, which precludes any review of the question by this court.

We think that this is not the true construction of the finding. After the court has found all the facts in detail, the motion states that "on the foregoing facts the plaintiff claimed title to the horse by gift from said Edwin C. Wheeler and that she was entitled to recover the value of it from the defendant, and requested the court so to rule, but the court refused so to rule;" and then, after stating certain questions of evidence, at the end of the finding the court adds :—" Upon the foregoing facts the court ruled that there was no delivery of the horse to the plaintiff, and rendered judgment for the defendant;" meaning obviously that the facts so found in detail did not constitute a sufficient delivery to meet the requirements of the law relative to a parol gift; and this is the question on which the case turns and which we will now briefly consider.

The argument for the defendant on this point seems to assume that the husband did not become the owner of the horse until the 4th of May, when it was delivered at Brooklyn, and that the evidence of the consummation of the husband's express intent to give it to his wife must be sought for wholly in what took place after that time, when it must be conceded that no acts are found after that time having any significance in reference to this question. But we think that the true character of the transaction can not be exhibited under any such limitation. We think, when the facts to which we have already adverted as evidential of the husband's intention are carefully considered, the transaction will appear as an original purchase by the husband for the wife, with the knowledge on the part of the vendor before the bargain was in any way consummated, or executed by either party, that the horse was bought for the wife, and that the title was to pass directly to her as far as the intent of the parties could make it hers, so that, as between husband and wife, the consummation of the gift is found in the execution of the note on the part of the husband which purchased for her the horse; and when the horse was delivered in Brooklyn, it was delivered as hers, and then became hers subject only to such right as the law would give the husband as trustee for the wife.

The case would have been very different if the husband had attempted to give his wife any of the horses previously owned by him, and kept, for instance, in his livery stable with his other horses. In such case the same *indicia* of ownership in the husband would continue to exist after the pretended gift as before, and it would call for something more than mere words to perfect and validate the gift. But here, at the very inception of the transaction, the purpose of the purchase was announced, and was repeated in the presence of the vendor and the plaintiff before the note was given and before the delivery of the horse.

A new trial is advised.

In this opinion the other judges concurred.