## CHESTER ELMER *vs.* JAMES H. WELCH.

*S* sold to *W* in good faith a dwelling-house and barn, and a half interest in a stallion kept at the barn, the other half being already owned by *W*. In consideration of this sale *W*, among other things, assumed and agreed to pay a mortgage that had been made by *S* upon the premises. The note secured by the mortgage was on demand, and had run two years at the time. Soon after the purchase a creditor of *S* factorized *W* as the debtor of *S*. The mortgagee had not demanded payment of the mortgage debt, and *S* had not paid anything upon it since the assumption. Held that *W* was not to be regarded as having broken his contract with *S* to pay the mortgage debt, and was not therefore holden to him for damages.

The creditor at the same time attached the half interest in the stallion that had been owned by *S*. Possession of the real estate had been delivered to *W* at the time of the purchase and the deed of the same duly recorded, and he had ever since remained in exclusive possession. He had however employed some of the same men at the barn who had been employed by *S* and had also employed *S* himself to take care of the stallion, but it was used by him publicly and for his own benefit. Held that there was not such retention of possession by *S* as made the sale void as to creditors.

SCIRE FACIAS upon a process of foreign attachment; brought to the Superior Court in Hartford County, and reserved upon facts found for the advice of this court. The case is sufficiently stated in the opinion.

*E. Goodman* and *F. H. Parker*, for the plaintiff.

*E. S. White*, for the defendant.

PARDEE, J. On July 22d, 1876, the defendant bought of William B. Smith, who was insolvent, a piece of land in West Hartford upon which stood a house and two barns, together with hay, harnesses, wagons, and other personal property therein; also his half interest in a stallion, the other

Elmer *v.* Welch.

half being in himself.   Toward payment he assumed a note for $5,400 which Smith had made and secured by a mortgage of the land, and made a note for $1,000 payable two years from date at bank to his own order and delivered it to Smith.

On July 29th, 1876, the plaintiff factorized the defendant as being a debtor, and as having in his possession property belonging to Smith.   The court found him a debtor to the amount of $1,000; execution issued and was returned unsatisfied; and the plaintiff brings this action of scire facias to the Superior Court, and the advice of this court is asked as to the judgment to be rendered.

When the factorizing process was served upon the defendant Smith held his note for $1,000 above described, and the plaintiff insists that he is entitled to a judgment for that amount at least.   The statute (Revision of 1875, page 409, section 40,) provides that "when a debt evidenced by a negotiable promissory note shall have been attached by process of foreign attachment and the defendant shall have had actual notice thereof, he shall not negotiate or transfer such note during the continuance of the attachment lien; and, if he do so, shall be deemed guilty of fraud upon the attaching creditor, who, if he shall recover judgment in his original suit, may, within one year after its rendition, institute an action on the case against the defendant for such fraud; but the title of any *bonâ fide* purchaser of such note for valuable consideration, without notice and before maturity, shall not be affected by this section."   Smith having transferred the note before maturity to the American National Bank, the defendant ceased thereafter to be indebted to him, and the plaintiff's lien was dissolved, if the bank was a *bonâ fide* purchaser.

Again, the plaintiff insists that the defendant has in his hands property belonging to Smith, for the reason that the sale thereof was not followed by the open, visible and continued change of possession which is requisite to its validity as against creditors.

The finding upon that point is, that the sale and purchase were made in good faith; that the property immediately passed under the control and supervision and into the posses-

sion of the defendant, who used it publicly for his own benefit, receiving rent from a tenant in the house. He took into his service one or two men who had been in the service of Smith, and employed the latter to take charge of the horse.

Here then was a recorded transfer of real estate, with immediate and exclusive possession and occupation thereof by the purchaser. This is notice to all the world of a change of ownership; and the publicity of this change as to the principal thing is to be imputed in full measure to the change as to the personalty, the mere incident remaining in visible connection therewith; the law did not demand either a permanent or temporary removal of the latter; whoever saw it thereafter in the defendant's possession and use upon the realty known to be his, became chargeable with knowledge that he held and used both by the same right; and, as all persons had knowledge that Smith neither owned nor occupied the realty, whoever saw him thereon in charge of any part of the personalty was bound to presume him to be the servant of the defendant rather than the owner of the property. The publicity of the change is quite up to the standard established by this court.

Again, the statute (Revision of 1875, page 343, sec. 2,) provides that "any negotiable promissory note payable on demand which remains unpaid four months from its date shall be considered overdue and dishonored after that time."·

The plaintiff claims that as at the service of the factorizing process the $5,400 note was in that condition, Smith had the right to recover damages to the amount thereof from the defendant for a breach of his contract to pay it.

But the date of the note precedes that of the contract of assumption by nearly two years; the defendant has paid interest upon it semi-annually, and there is no finding that the payee demanded payment of the principal. Obviously it was held as an investment, and the contract imports that when the payee demanded the defendant should make payment. Before such demand and a refusal Smith could claim neither actual nor constructive breach of the contract; it is certain that he did not intend to claim anything from the

statutory maturity, for that had occurred long before; and it is not to be presumed in the absence of testimony that he intentionally entered into a contract having an element of impossibility.

And the contract of assumption is to be interpreted in the light of the fact that the note was an incumbrance of record upon land purchased by the defendant; he had the right to pay it at any time before payment by Smith, and have a discharge of the mortgage, and after such payment Smith, if entitled to any, would be to only nominal damages.

Therefore the finding fails to show that when the defendant was factorized he was indebted to Smith upon the contract of assumption; and we advise the Superior Court to render judgment in his favor, if, upon further hearing for that purpose had, it shall appear that the American National Bank was a *bonâ fide* purchaser of the note for $1,000 before maturity.

In this opinion the other judges concurred.