JOHANNA GILLIGAN *vs.* CHARLES A. LORD.

A husband, having no debts and without fraud, made a valid conveyance to his wife, through an intermediate grantee, of the homestead on which they lived, and of a horse, wagon, and other personal property upon it. The deed was at once delivered and recorded, but there was no delivery of the personal property aside from the transfer of the real estate. Several months later the personal property was attached by a creditor of the husband upon a debt subsequently contracted, the horse however being one that had been taken in exchange for the first one. The husband had continued to use and control the property as before the transfer. Held—

1. That the horse having never been the property of the husband, his possession of it could not be a retention of possession.

2. That the deed was notice to all the world of the transfer of the real estate and of the wife's possession of it.

3. That her possession of the real estate carried with it the possession of the personal property transferred.

4. That the possession of the real estate by the wife was none the less her possession because she shared it with her husband.

5. That a fraudulent retention of possession was not to be inferred from the fact that the husband continued to use and control the property as before, the husband usually having the care and use of the wife's property, and it being impossible for her to have exclusive possession without withdrawing the property from family use, which could not be required of her.

While the relation of husband and wife gives special opportunities for fraudulent transfers of property, and therefore transactions between them are open to special suspicion, yet this is only in relation to actual fraud. Where no actual fraud exists the relation rather operates in their favor upon any question of merely constructive fraud. The husband's possession and use of the wife's property may be only a family use and as necessary to her interests as to his, and may be entirely consistent with her possession.

The husband made the conveyance of the real and personal estate while very ill, and his expectation of death was found to be the moving cause. The deed however was absolute on its face, was delivered unconditionally and at once put on record, and no distinction was made in the transaction between the real and personal estate. Held that the gift of the personal property was not to be considered as a *donatio causâ mortis*, and that therefore the title of the wife was not affected by her husband's recovery.

[Argued January 17th—decided February 15th, 1884.]

REPLEVIN; brought to the Court of Common Pleas of

Hartford County, and heard before *Bennett, J.* The court found the following facts :

The property replevied was a horse, two wagons, one business harness and one light harness, a lap-robe, a horse-blanket, and a sleigh. The plaintiff owned no property before July 15th, 1881. Her title to that in question (except the lap-robe and light harness), she claimed to have derived from her husband, William Gilligan, who on that day executed a warranty deed of " one certain piece or parcel of land lying in said Berlin, thirteen acres, be the same more or less, with all the buildings thereon ;   *   *   * also all my household furniture, all my live stock, and all my personal estate of every description or wherever situated," to Walter Gwatkin. And on the same day Gwatkin executed a quitclaim deed of the same described property to the plaintiff. Both deeds were at once recorded and afterwards delivered to the plaintiff.

A day or two before the execution of the deed Gilligan had very violent and prolonged bleeding of the lungs, and was so weak that he believed his death was near. The moving cause of his execution of the deed is well stated in his own words : " I thought I was going to die, so I made a deed of all my land and personal property ; the only reason I had for making the deed was that I expected to die and I wanted her to have all the property."

The personal property in question (except the lap-robe and light harness, including a horse that was afterwards exchanged for another), was on the real estate at the time of the execution and delivery of the deed, and remained thereon until the attachment hereinafter stated. The plaintiff and her husband continued to occupy the real estate as a homestead after July 15th, 1881, the same as before that date.

The horse attached was one which Gilligan had exchanged in November, 1881, with one Stevens, for a bay horse which Gilligan owned prior to July 15th, 1881, and which was included in the personal property described in the deed of that date. The plaintiff knew of the exchange at the time it was made.

It did not appear that there was any delivery to the plaintiff of the personal property, nor was there any change in the control or use of it after July 15th, 1881. Gilligan continued to use and control it all, and has so continued to control and use it up to the day of its attachment.

About October 1st, 1881, Gilligan built an addition to the house and opened a saloon in his own name therein, and is now continuing that business. The plaintiff has also engaged on her own account in the business of keeping boarders. Her husband has always intrusted the keeping of his money to her, and when he wanted any to use he asked her for it. The money received from boarders the plaintiff kept apart from that which came from the saloon business.

The lap-robe and light harness were purchased at one time in February, 1882. The plaintiff and her husband testified that she furnished the money from her own funds to pay for them; but in view of the facts that her husband in person made the purchase and actually paid over the money to the party of whom they were bought, and also so far as appears has controlled and used them as his own, I find them to be the property of William Gilligan.

On March 4th, 1882, the defendant, who was a deputy sheriff for the county of Hartford, attached all the property in question in a suit brought by Lewis Brothers of the city of New York, against William Gilligan, for a bill of goods delivered on December 3d, 1881, and at the time of the issuing of the writ of replevin were held by the defendant under that attachment.

On the trial the plaintiff objected to the introduction of testimony showing the consideration of the deed and the circumstances under which it was executed, but the court overruled the objection and admitted the testimony.

On the facts as found the plaintiff claimed as matter of law that she was the owner of the property and entitled to possession of it, but the court overruled the claim, and rendered judgment for the defendant. The plaintiff appealed.

*J. Walsh,* for the appellant.

1. A voluntary conveyance made in good faith is valid against subsequent creditors. " In such a case the character or amount of the consideration is immaterial and *not the subject of inquiry.* If there is no evidence of fraud in the execution of a deed, subsequent creditors cannot be permitted to inquire into the fact whether the consideration expressed is the true consideration." Bump on Fraud. Conveyances, 312; *Benton* v. *Jones,* 8 Conn., 186; *Bank of U. States* v. *Housman,* 6 Paige, 526. The evidence as to the circumstances in which the deed was given, and as to the consideration, was therefore inadmissible.

2. The defendant, under the evidence erroneously admitted, claimed that the conveyance of the property was a gift *causâ mortis,* and the court so ruling, manifestly erred. A *donatio causâ mortis* is intended to take effect only on the death of the donor. *Raymond* v. *Sellick,* 10 Conn., 485; *Edwards* v. *Jones,* 1 My. & Cr., 226. Here are absolute deeds of the property unaffected by any condition, duly delivered and recorded, and an irrevocable title is thus conveyed. If the gift was merely *inter vivos* by parol, there might be some ground to claim that there was not a sufficient delivery to pass the title. But the plaintiff acquires her title by deed, and it is elementary law that the contract gives a complete title to the plaintiff. Again, the personal property was on the real estate conveyed to and occupied by her, and no useless formality is required in such cases. 1 Swift Dig., 444; *Manton* v. *Moore,* 7 T. R., 63; *Nichols* v. *Patten,* 18 Maine, 231; *Meach* v. *Meach,* 24 Verm., 591.

3. This court has repeatedly ruled that a husband has a right to give personal property to his wife, even when the contract is made directly with her, in the absence of fraud, where existing creditors are not prejudiced, and where there was no intention to defraud subsequent creditors. *Darcy* v. *Ryan,* 44 Conn., 518. That case is almost identical with the present one. There was no fraud nor intention to defraud existing, or subsequent creditors in the case at bar, and the conveyance is made through a third party, and hence is perfectly valid.

*W. W. Perry*, for the appellee.

1. There was no gift of the property by the husband to the wife, because there was no delivery of the property. The court finds no delivery, and finds no fact from which delivery can be inferred. It does find that the husband, after the execution of the deed, continued to use and control all the property as before.

2. If there was a gift, it was not a gift *inter vivos*, but a gift *causâ mortis*, and that conclusion is, of course, fatal to the plaintiff's case.

3. The testimony to which objection was taken was clearly admissible. To say nothing of other reasons, there is one, lying perhaps somewhat below the surface, which is conclusive. Evidence that the husband executed the deed in the belief that his death was near, and solely for the purpose of making provision for his wife in the expected event of his death, taken in connection with his assertion by his conduct after his recovery of continued ownership, was competent to show, and strongly tended to show, that there was not an absolute, intentional and legal delivery of the deed.

LOOMIS, J. It is clear from the facts found in this case that William Gilligan, the husband of the plaintiff, by his deed of July 15th, 1881, intended to make a gift to his wife both of the real estate conveyed and of his personal property. This gift he had a perfect right to make. He was not in debt, and this transaction was not affected in any way by fraud. The only question is, whether as to the personal property there was the delivery necessary to perfect a gift, and such a transfer of possession to the plaintiff as to make her title good against creditors.

Whatever question there might be as to the sufficiency of the delivery if there had been no conveyance of the real estate, yet we think that with that conveyance the delivery was sufficient. The deeds were put on record, and were notice to all the world of the change of title. In *Elmer* v. *Welch*, 47 Conn., 58, where personal property was sold with

the real estate upon which it was kept, the court say with regard to the effect of the recorded transfer of the real estate:—" This was notice to all the world of a change of ownership; and the publicity of this change as to the principal thing is to be imputed in full measure to the change as to the personalty, the mere incident remaining in visible connection therewith. The law did not demand either a permanent or temporary removal of the latter. Whoever saw it thereafter in the defendant's possession and use upon the realty known to be his, became chargeable with knowledge that he held and used both by the same right; and as all persons had knowledge that Smith neither owned nor occupied the realty, whoever saw him thereon in charge of any part of the personalty was bound to presume him to be the servant of the defendant rather than the owner of the property. The publicity of the change is quite up to the standard established by this court."

It is true that it is here found that the plaintiff and her husband continued to occupy the real estate as a homestead until after the property was attached; but the occupancy of the wife was none the less an occupancy because she shared it with her husband. It is also found that her husband continued to use and control the personal property as before, and so used and controlled it down to the time of the attachment. But it is difficult to see how the wife could well have kept a possession and use of the property distinct from her husband's. It was necessarily on the premises occupied by them both, and naturally, and almost necessarily, under his care and subject to his use. Considering the nature of the property it is difficult to see how she could have kept it under her exclusive and visible control, except by withdrawing it wholly from family use, which could hardly have been required.

While the relation of husband and wife gives special opportunities for fraudulent transfers of property, and therefore transactions between them are open to a special suspicion, yet this is only in relation to actual fraud. Where, as here, a transfer of property is made by a husband

to a wife in good faith and without any fraudulent intent, and especially where there are no creditors to be affected, then the relation of the parties rather operates in their favor upon any question of merely constructive fraud. In the case of all marriages before the act of 1877 the husband had the right to the use of the wife's personal property, and even where he had released his marital right he remained a naked trustee of it; and where this law does not apply it is yet natural and proper that the husband should be allowed to use the wife's property. It becomes only a form of family use, a use perhaps as necessary to the wife's interests as to those of the husband. There is therefore a special reason in such a case for regarding the use of such property by the husband as on the family account and as in no way conflicting with the wife's possession. It is not necessary to a sufficient possession on her part, that it should absolutely exclude the possession of the husband. In this case, with the notice of the wife's general ownership furnished by the recorded deed, there would be such a presumption of her ownership of the personal property on the premises, as would reasonably lead any person observing the husband's use of the property, to conclude that he was using it as hers, or in the exercise of his rights as husband, and not as exclusively his own.

It is found that the horse that was attached was not the one originally given to the wife, but one taken in exchange for that one. As the first horse was the property of the wife, the horse taken in exchange for it with her consent would of course become hers. And as this horse had never before been the husband's, but became at once the wife's, his use of it was not a retention of possession, but from the first a use of it as hers. *Wheeler* v. *Wheeler*, 43 Conn., 503.

It is claimed on the part of the defendant that the gift of the personal property was intended as a *donatio causâ mortis*, and upon the recovery of the donor became of no effect. But in the first place it is not found that the gift was of that character; it is only found that the moving cause of the execution of the deed was the expectation of the

grantor, who was then ill, that he would die. In the next place the gift of the personal property was made at the same time and under the same motive with the gift of the real estate and was undoubtedly intended to be as absolute and unconditional as that. And we find that the deed not only contains no condition in its terms, but was not delivered, as it might have been, conditionally or as an escrow, but directly and unconditionally to the grantee and was immediately put upon record. It would hardly be possible to find here an intent that it should operate only in case of the grantor's death. We must regard the transfer of both the real and personal estate as complete and absolute.

As the court below found that the lap-robe and light harness were never the property of the plaintiff, but belonged at the time of the attachment to the husband, the judgment below was correct as to them.

There is error in the judgment complained of and it is reversed, except as to the lap-robe and light harness.

In this opinion the other judges concurred.