LANE & WIFE, Appellants, v. EWING, Respondent.

1. A trust created and declared in conformity to the requirements of the statute of frauds will be enforced, notwithstanding the consideration is voluntary. If, however, the transaction remains executory and incomplete, an enforceable trust will not be held to be created. The equitable interest must be completely parted with.
2. A trust need not be created by writing, although, when it relates to real estate, it must be proved by writing.
3. A complete divestiture of equitable title may be produced by a clear and unambigous declaration of a trust, although a further disposition of the legal title is still in contemplation.
4. In petitions seeking equitable relief, where a full statement of the facts is fit, the plaintiff should be permitted to state his own case in his own way.

*Appeal from St. Louis Land Court.*

Demurrer to a petition. The plaintiffs are William Carr Lane and Mary E. Lane, his wife; the defendant, William L. Ewing. The suit is in behalf of said Mary E. Lane. The petition is in substance as follows, the parts in brackets being

those portions stricken out on motion of defendant: that said Lane before 1838 became the owner of a large amount of real estate in the city and county of St. Louis; [that defendant Ewing is the younger brother of the plaintiff Mrs. Lane, and as such was nurtured and brought up chiefly in the family and under the protection of the plaintiffs]; that for several years next before 1842 said Lane became embarrassed in his affairs and unable promptly to pay his debts; that in order to secure his creditors against loss and to gain time for a better settlement of his affairs, he gave liens and encumbrances upon various portions of his real estate, and among the rest the tract of thirty-two arpens known as the Vasquez tract; that judgments were obtained against Lane by certain of his creditors, and executions issued, and a large quantity of real estate advertised to be sold November 21, 1842, among the rest, this Vasquez tract; that said tracts and lots, including said Vasquez tract, were offered for sale by the sheriff on that day; that defendant purchased said Vasquez tract for ten dollars, a merely nominal price, and the other tracts at prices very far below their market value, the amount bid for all being only one hundred and thirty-one dollars and fifty cents; [that the reason why defendant was enabled to purchase the said lands at those diminished prices was that few or no persons bid against him, because those, who would otherwise have bid for the lands and have run them up to much higher prices, declined to compete with the defendant, induced thereto by the belief that the defendant was trying to purchase the said lands for the purpose of saving, if possible, something from the wreck of said Lane's estate, and of making a provision out of the lands for his sister, the plaintiff, Mrs. Lane]; that on January 1, 1843, the sheriff made him a deed conveying said lands to defendant. Plaintiffs do not charge that the defendant purchased said lands under any special contract that he would hold them in trust, either for the payment of the debts of said Lane or for the use of Mrs. Lane, [but do charge that in point of fact he did purchase them with that intent; that after the purchase he did

frequently, both to these plaintiffs and to other persons, de-clare that he held the said lands under the sheriff's deed only for the purpose of refunding to himself the money paid by him for said lands and whatever advances he had made for the said Lane, and of paying the debts of said Lane, for which he, defendant, was in any way liable, and, these objects being accomplished, for the use of Mrs. Lane; that for a number of years after the making of said deed defendant treated said lands not as his own estate but as a trust fund in his hands for the uses and purposes above expressed, by offering to sell portions of the said lands for the payment of the debts of the said Lane, and by exhibiting to plaintiffs accounts for taxes, and other expenses incident to the posses-sion and management of said lands, as expenses chargeable upon the trust fund in his hands]; that on or about Novem-ber 29, 1847, defendant, being about to start from St. Louis on a long journey, in order to secure the rights of said Mary E. Lane, in case of his death, voluntarily made a mem-orandum, signed by him with his name, in the presence of witnesses, which is recorded, and which is as follows. [This memorandum, omitting the date, signature of defendant and those of witnesses, is set forth below in the opinion of the court.] Plaintiffs state that before said sheriff's sale, and on or about August 7, 1841, the plaintiff Lane, to raise money to pay certain pressing debts, borrowed fifteen thousand dol-lars from Madame Pelagie Berthold, and gave his note there-for with defendant Ewing as security thereon; that to secure said note he conveyed a large amount of real estate, includ-ing the Vasquez tract, to J. B. Sarpy and P. A. Berthold as trustees; that this debt to Mad. B. remained unpaid until 1848; that in July, 1848, it was ascertained that there re-mained due upon said note, for principal and interest, twenty thousand dollars; that it was thought desirable by the par-ties interested that said trustees Sarpy and Berthold should be relieved from the trouble of managing and selling the land for the payment of the debt, and that the defendant, who was liable as security, should have a larger control over

6—VOL. XXXI.

the security and power to sell the lands as occasion might offer, to relieve himself from liability by paying the debt in whole or in part; that said trustees conveyed said lands to defendant in July, 1848, at the request of Mad. Berthold, the creditor, who joined in the deed; that plaintiff Mrs. Lane was not a party to the transaction; [that after the making of this deed said Lane was anxious to be relieved from the pressure of his debts, and offered repeatedly, so far as he had power over the subject, to allow Mad. Berthold to take the whole of said real estate in absolute property in full payment of his indebtedness to her, and in like manner offered to let defendant, who was son-in-law of Mad. Berthold, to take the whole of said lands, which are included in the sheriff's deed to defendant, in full satisfaction and discharge of said Lane's said indebtedness; that sometime after the making of said deed of trust, with a view to the speedy payment of the debt and discharge of said Lane, a valuation of the lands was made by disinterested persons; that this valuation was in some particulars unsatisfactory to the said Lane; that he believed some of the property was estimated too low; that he objected to making a partial sale of the lands at those low rates, but, for the sake of being fully discharged from the debt, he was willing and offered to defendant that he should take the whole of the lands and at once discharge said Lane from the debt; that defendant Ewing declined the offer]; that said Ewing, having the legal title vested in him by the deed last mentioned and the sheriff's deed, and being personally interested, as being jointly bound with the said Lane in the said note, proceeded to execute the trust first reposed in Sarpy and Berthold by selling portions of said lands from time to time and applying the proceeds towards the payment of said debts; that in doing this he frequently employed the agency and assistance of the said Lane to negotiate sales and settle the terms of conveyance, and then said Ewing made the deeds to the purchasers and received the proceeds and applied them to the purposes of the trust; that sometime in the year 1849 the said debt to Madame Berthold, principal

and interest, was paid and extinguished by said Ewing out of the proceeds of the lands thus sold by him; that by the sales of the lands so held in trust by said Ewing all the debts of said plaintiffs, for which the defendant was liable as security, were fully paid; and all advances and outlays of money made by the defendant, either for the purchase of said trust lands or any of them, or for the purchase or extinguishment of encumbrances thereon, or for taxes or other charges, &c.; that the defendant, being thus relieved from all liability on account of his suretyship for plaintiffs and being fully paid and refunded all sums advanced by him, proceeded to execute the trust on which he held the said lands as conveyed to him by the sheriff, and as the said trust is declared in the written memorandum of November 29, 1847; that it was not necessary to sell all the lands to raise the required amount of money; that lands considerable, both in number and value, remained unsold in the hands of defendant, and he in the year 1849, by divers deeds, conveyed to trustees, for the sole and separate use of the plaintiff Mrs. Lane, all the said lands remaining unsold except the said Vasquez tract; that said tract has never been sold by the defendant for any trust purposes, but he now claims the same as his own property free from the trust in favor of the plaintiff Mrs. Lane; that said tract stands in the condition of the other unsold tracts and lots which where conveyed by the defendant to the trustees of Mrs. Lane; [that before the full payment of Mad. Berthold's debt, and while the defendant held said tract in trust for Mad. Berthold's debt and in residuary trust for Mrs. Lane, the defendant more than once expressed a wish to own the same as his private property, and to improve it and reside there, and the plaintiff Lane gave his free consent that he (defendant) should take it at a moderate, even low price; that for a short time said Lane believed that defendant had determined to take said tract and pay a low price for it, and believed that he had done so by paying off a debt of the said Lane for about $2,500 or $3,000, and that nothing remained to be done to perfect the arrangement but to

make the necessary deed to convey to him the interest of said Mrs. Lane; that this was a mistake of said Lane; that he soon ascertained that said Ewing had not paid any thing for the purchase money of said tract so as to take it out of the trust in favor of the plaintiff Mrs. Lane] ; that at that time defendant had nothing but the barren legal title to said tract of land, while the equitable right and interest belongs to the plaintiff Mrs. Lane; that since that time no contract has been made with him by these plaintiffs or either of them for the sale or transfer of the right to him, and, if he has paid any money on account of said tract, plaintiffs are now ready to pay him what shall be found reasonable and just; that the plaintiff W. C. Lane does not claim any interest in any of the lands embraced in said sheriff's deed; while the debts remained unpaid he claimed that said lands should be applied to the payment thereof; that the plaintiff Mrs. Lane is in equity and good conscience entitled to have the use and enjoyment of the said Vasquez tract; that the defendant denies her right and refuses to allow her to have and enjoy the same; that he pretends it is his own property, and applies it to his own use, and refuses to convey it, as he did the other unsold lands, to trustees for the use of the plaintiff Mrs. Lane.

Plaintiffs pray the court to declare that Mrs. Lane is entitled to the use and enjoyment of said tract of land, and to cause the title to pass to and be vested in some suitable trustee or trustees, to be held for the sole and separate use of the said plaintiff Mary E. Lane and her heirs and assigns, &c.

The court struck out those portions of the petition embraced within brackets, and sustained a demurrer as to the residue.

*E. Bates*, for appellant.

I. This is not a suit for a specific performance of a contract. Plaintiffs seek to enforce a trust expressly declared. The court is not asked to make a trust. The transaction was not incomplete and executory. Defendant held the lands in

trust. Lane was defendant's brother-in-law; the land was encumbered by a previous deed of trust made to secure defendant's mother-in-law for which he was himself liable; he bid off the land for ten dollars, without any specific contract to hold in trust, but in fact with intent to do so, and often declared that he did so hold. He treated it for years as trust property, charging to Lane the expenses of its management, he accepted an assignment of the previous deed of trust in order to enable him the better to execute the trusts reposed in him; he did execute the trusts as to all the lands except that tract in controversy, and received back all that he had paid and expenses. In 1847 he made a formal declaration of trust. This is a direct declaration of trust, plain and simple, leaving nothing to inference or implication. It is a complete executed trust. (See Hill on Trustees, 113, 115, 117; Lewin on Trusts, 110; 4 Kent Com. 303-4-5-6-7; 1 Co. Litt. 112 *a*; 2 Cowp. 705; 18 Ves. 149; 1 Keen, 551; 1 Hare, 470; 1 Phill. 343, 153; 1 Hare, 458; 4 Bear. 600; 5 id. 224.)

*Glover & Richardson*, for respondent.

I. The demurrer was rightly sustained. The petition shows no cause of action. The scope of the petition was to have specific performance of an agreement to convey a trust. The agreement was executory only. There was no consideration for it. The petition distinctly negatived consideration. There was no trust or confidence attending the purchase by Ewing; no privity or agreement; nothing valuable or meritorious inducing the agreement on his part. It was at most but an intention expressed on his part, not binding in law or equity. It was to be executed by him in such manner and to such extent as he saw fit. He did execute it in this way, passing to Mrs. Lane a very large estate. The piece of property now in dispute he, for good reasons of his own, desires to retain. The question is whether equity will compel him to perform this voluntary stipulation. It will not. Where the rights of the beneficiary rest upon an executory

Lane v. Ewing.

agreement there must be a valuable or meritorious consideration, or equity will not enforce. (1 Johns. Ch. 834; 4 id. 499; 11 Ill. 105; 4 Paige, 305; 6 Ves. 662; 7 Barr, 178; 3 Atk. 186; 1 Bail. Eq. 93; 12 Ala. 128; 19 Ala. 259; 1 Leigh, 36; 1 Hill, 57; 1 Barr, 445; 6 W. & S. 331; Hill on Trustees, 113; 3 Whart. 485; 3 A. K. Marsh. 1247; 1 White & Tud. Lea. Cas. 193, 213.) The petition says the agreement or declaration was voluntarily made. The relation of defendant to Mrs. Lane constituted no meritorious consideration. (1 Sandf. Ch. 258; 1 M. & C. 226; 1 Hare, 464; 1 Phill. 342; 1 Dana, 107.) In the case at bar no trustee was agreed on; the conveyance in trust had not been made. The transaction is imperfect and incomplete.

NAPTON, Judge, delivered the opinion of the court.

This case was determined upon a demurrer to the petition, after a considerable portion of it had been stricken out.

The defendant, Ewing, is a brother of the plaintiff, Mrs. Lane. The plaintiff, William Carr Lane, about the year 1841, was largely indebted, and his real estate, consisting of several detached pieces of land and lots lying in and about the city of St. Louis, was sold under execution, and the defendant became the purchaser at a nominal sum. Previous to this the defendant had become liable, as security, for the payment of a debt from Dr. Lane to Mad. Berthold (the defendant's mother-in-law) for $15,000, to protect which the plaintiff had mortgaged the same real property afterwards sold under the executions of other creditors and purchased by defendant. A portion of the property thus purchased at sheriff's sale was applied by the defendant to the payment of Lane's debts. In 1847 the defendant, being about to leave St. Louis on a long journey, and with a view to secure his sister, Mrs. Lane, in the event of his death, executed the following paper: " Mem. All the real estate (now remaining unsold) which was bought by me as the property of W. Carr Lane, and conveyed to me by sheriff Milburn, by deed dated January 31, 1843, and recorded in the recorder's office of St.

Louis county, Missouri, on the 16th day of January, 1844, book G, No. 3, p. 64 and following, to be conveyed by deed to Anne E. Lane, or any other trustee, in trust for the following purposes : 1st. To refund to me the entire purchase money which was paid for said land, including the money paid in purchasing liens on the same, taxes, &c. 2d. To secure me and my heirs from all accountability on account of my securityship for said W. C. Lane and my sister M. E. Lane, wife of said W. C. L. 3d. All the remaining portions to be held in trust for the sole and separate use of Mary E. Lane, and to be disposed of and applied according to the written order of said Mary."

In 1848, the mortgagees in the deed made to secure Mad. Berthold conveyed to Ewing all the land embraced in that deed, thus enabling him to dispose of an unencumbered title. The object of this was to enable the defendant more conveniently to raise the money necessary to extinguish this and other debts of Lane. Accordingly, the defendant proceeded to make sales as opportunity offered, and apply the proceeds to the payment of the debts, and in 1849 Mad. Berthold's debt, then $20,000, was extinguished. Ultimately, it is stated, all of Lane's debts, for which the defendant Ewing was in any way liable, were extinguished, and all advances were reimbursed, and Ewing proceeded to convey portions of the lands still remaining to trustees for the benefit of Mrs. Lane. In this way, all the real estate purchased by the defendant was disposed of except a tract of thirty-two arpens, situated in the St. Louis common, known as the Vasquez tract ; and this tract the defendant now claims as his own. The object of the petition is to have the alleged trust enforced as to this tract. The suit was brought in 1857.

It will be seen that the only question presented by the record is, whether the facts stated constituted the defendant a trustee.

There is no doubt that where a trust has been created and declared in a mode not countervening the statute of frauds, it will be enforced, notwithstanding the consideration is vol-

untary. It is equally well settled that an executory agreement, upon a voluntary consideration, will not be enforced.

The difficulty, in applying these general principles, is in determining whether the agreement is executory or executed ; or, in other words, whether the relation of trustee and *cestui que trust* is established. The distinctions, which have been taken upon this point, are exceedingly refined and somewhat obscure, and the decisions are hard to be reconciled. A reference to the cases in England, a review of which may be found in a note to White & Tudor's Leading Cases (p. 198), will show a considerable fluctuation of opinion as to the criterion by which the character of the transaction is to be determined.

In *ex parte* Rye, 18 Ves. 149, Lord Eldon said, " A party may so constitute himself a trustee that a court of equity will execute the trust in favor of a volunteer. It is clear that this court will not assist a volunteer, yet, *if the act is completed* though voluntary, the court will act upon it. It has been decided that, upon an agreement to transfer stock, this court will not interfere ; but if the party has declared himself to be the trustee of that stock, it becomes the property of the *cestui que trust*, without more, and the court will act upon it."

Lord Cottenham said, in Jeffreys v. Jeffreys, " My impression is, that the principle of the court to withhold its assistance from a volunteer applies equally, whether he seeks to have the benefit of a contract, a covenant, or a settlement." And this was a case where a father in a settlement covenanted to convey to trustees in trust for his daughters certain freehold estates, and also covenanted to convey in the same way certain copyhold estates. He conveyed the freehold property according to the settlement, but conveyed the copyholds to trustees for his wife, and after his death the copyholds were held to belong to the widow, notwithstanding the previous settlement.

Sir James Wigram, the vice-chancellor, in McFadden v. Jenkins, 1 Hare, 462, attempts to reconcile the cases in Eng-

land, and to point out the principle upon which the courts act. " There may be difficulty," he observes, " in reconciling with each other all the cases which have been cited. Perhaps they are to be reconciled and explained upon the principle that a declaration of trust purports to be and is in form and substance a complete transaction, and the court need not look beyond the declaration of trust itself, or inquire into its origin, in order that it may be in a position to uphold and enforce it; whereas an agreement or attempt to assign is, in form and nature, incomplete, and the origin of the transaction must be inquired into by the court; and where there is no consideration, the court, upon its general principles, can not complete what it finds imperfect." The same learned judge said, in Meek v. Kettlewell, 1 Hare, 470, that the old cases only went so far as to hold that " where the legal interest in property is transferred or acquired in pursuance or in execution of an antecedent agreement or direction leading the uses or trusts of that property, or as part of the transaction creating the trust, the court will execute the trust, though voluntary." But he afterwards adds that " there does not appear to be any reason why the doctrine of the court should be so confined, provided the trust is actually created and the relation of trustee and *cestui que trust* established between the parties." Therefore his conclusion is, that " in the case of a formal declaration of trust by the legal or even beneficial owner of property declaring himself in terms the trustee of the property for a volunteer, the court might not be bound to look beyond the mere declaration. If the owner of property, having the legal interest in himself, were to execute an instrument, by which he declared himself a trustee for another, and had disclosed that instrument to the *cestui que trust*, and afterwards acted upon it, that might perhaps be sufficient."

The same judge repeats the idea in Hughes v. Shibbs, 1 Hare, 477 : " If a person intending to give property to another vests that property in trustees, and declares a trust upon it in favor of the object of his bounty, there are cases which

establish that, by such acts, the gift is perfected, and the author of the trust loses all dominion over it. The principle has been extended to cases in which the author of the gift has had the legal dominion over the property remaining in him, but has completely declared himself to be a trustee of that property for the object indicated. But it is clear also that a person, not intending to give or part with the dominion over his property, may retain such dominion, notwithstanding he may have vested the property in trustees and declared a trust upon it in favor of third persons." The result of the cases is, according to vice-chancellor Wigram, that " the court *looks into the nature of the transaction,* and determines *from the nature of the transaction* what the effect of it shall be in divesting the owner of the property to which it relates." And Lord Collenham said, in Bell v. Cureton, 2 Myl. & K. 511, that the distinction was adopted to promote the views and intentions of the parties.

A leading object of inquiry, then, we may infer from the expressions of opinions we have just quoted, is to ascertain whether the transaction is complete or incomplete. Where the gift is imperfect, a court of equity leaves the parties where it finds them, and will not assist either party ; but where there is an actual settlement made for vesting the estate in trustees, or the author of the trust constitutes himself a trustee for volunteers, the courts will enforce the trust. The difficulty is in determining when the transaction is complete, and this difficulty is very much increased when we come to apply the principle to that class of cases in which the trust is supposed to be left in the author of the trust, and there is no transfer of the legal estate to another. In such cases, the existence of the trust may precede the execution of the evidence by which alone it can be established. A trust need not be *created* by writing, although, when it relates to real estate, it must be *proved* by writing. (Steeve v. Steeve, 5 Johns. Ch. 1.) It seems to result from the nature of such a transaction that a complete divestiture of equitable title might be produced by a clear and unambiguous declaration to

that effect, although a further disposition of the legal title was still in contemplation.

In determining the effect of the writing executed by the defendant in 1847, it is not easy to lay out of consideration the fact that the property referred to originally belonged to the plaintiff. It is recited in the paper itself. If we could divest ourselves of all knowledge of this fact, and consider the sole fact that the property then was the absolute property of the declarant, it would be going very far to say that this declaration, of itself, constituted the defendant a trustee for Mrs. Lane as to the undisposed portion of the estate. It would seem, from the plain language of the instrument, that something more was contemplated ; that the property was "*to be conveyed* by deed to Anne E. Lane or a trustee." And all the cases agree that, even in the case of a trust created or continued in the party from whom the bounty emanates, the transaction must show that the entire equitable interest is parted with.

On the other hand, the facts antecedent to the execution of the writing and recited in it might lead to the inference that the declaration was designed as an acknowledgment of an existing trust ; that the relation of trustee and *cestui que trust* already existed when the paper was signed, and that its object was to place the rights of the *cestui que trust* beyond the reach of casualties.

The embarrassment attending a proper understanding of transactions of this character is very much increased, where they occur between family connexions. In such cases courts of equity have always been cautious in affixing a technical trust to acts and declarations which, in the absence of the ordinary motives operating· in the domestic circle, might be regarded as quite unequivocal. It was observed by Chancellor Kent, in the case of Steeve v. Steeve—a case in which a son had purchased his father's property under execution, and had from time to time made conveyances of portions of it to his brothers and sisters, and made various declarations orally and in writing of his intention to distribute whatever

remained, after his own reimbursement, equitably and justly for the common benefit of the family—that considerations arising from the ties of blood and the dictates of family affection would ordinarily lead such a purchaser to offer to restore the property on being reimbursed his advances and indemnified for his trouble, or to engage that all the profits of the purchase should be applied to the benefit of the relative whose property has been thus purchased. But he adds that "intentions and intimations of that kind can not well be considered as amounting to a clear and absolute trust, which a court of equity will recognize and enforce, unless the declaration of it be quite positive and free from all ambiguity."

In the present condition of this case, we do not feel warranted in hazarding a definite opinion. A considerable portion of the petition was stricken out, on the motion of the defendant. An opinion, upon a partial view of the case, would only tend to embarrass a trial upon an amended petition and answer and a full disclosure of the facts, should the case be further proceeded with. We think the court should have permitted the plaintiffs to state their whole case in their own way, and that the case stated is of such a character as to require a further development in order to arrive at a satisfactory conclusion upon its merits.

The judgment is reversed and the case remanded. The other judges concur.