MARY E. KEYES *vs.* WILLIAM E. CARLETON & others.

Suffolk. Nov. 19, 1885. — Jan. 12, 1886. DEVENS & GARDNER, JJ., absent.

A married woman, for the purpose of preventing her husband from influencing her to dispose of her real estate, conveyed it to her brother as trustee, in trust to pay over the income to her during her life, and after her decease to pay over and account for the same to her children. The trustee was also given the power to sell the real estate, at his discretion, and, at any time after the death of the settler, to convey the same to her children, and, if not conveyed during the lifetime of the children, then to convey the same to their issue. In consideration of her executing the deed, her brother lent her $600. No fraud or imposition was practised upon her, and the deed was carefully read to her. At the time of executing the deed, the contingency of her surviving her husband was not in her mind or in that of her advisers. The trustee sold the real estate and invested the proceeds. *Held,* that she was not, on her husband's death, entitled to have the trust set aside.

BILL IN EQUITY, filed April 17, 1884, to have a trust created by the plaintiff, by a certain deed to the defendants William E. Carleton and Charles E. Abbott, as trustees, declared null and void, and that the trustees be ordered to account for and pay over to the plaintiff the whole of the trust fund.

By the deed, a copy of which was annexed to the bill, the plaintiff, in consideration of five dollars to her paid by Carleton and Abbott, and " the natural love and affection she bears for her children," conveyed to Carleton and Abbott a certain parcel of land in Denver, Colorado, upon the following trusts : " To manage, let, and take care of, to collect and receive the rents, increase, uses, issues, and profits thereof, to pay over and account for the same to the said Mary E. Keyes, or for her use, during her life, and after her decease to pay over and account for the same to her children, or for their use. To sell and convey the same in fee simple at their discretion, discharged of all trusts, and at any time after the decease of the said Mary E. Keyes, if they shall see fit and proper, but only in such case, to convey the same to the children or next of kin of the said Mary E. Keyes, and in case it shall not be so conveyed during the lifetime of the said children, then to convey the same to their issue." The deed also contained provisions for continuing the trust, by the appointment of a new trustee in case of the death or resignation of either of the trustees named. The deed was dated June 22, 1877.

The bill alleged that the plaintiff's intention in signing the deed was to place her real estate in such position and condition that her husband could not have any control over it in her lifetime; and that, if she should die before her husband, it should go to her children; that, at the time of signing the deed, she was greatly disturbed in mind, and did not understand the full effect of the deed; that she supposed, in case of her husband's death before hers, the estate would be reconveyed to her discharged of trusts; and that she executed the deed under an entire mistake and misapprehension of its force and effect, as bearing upon her rights in case her husband died before her.

The bill also alleged that the terms of the trust were vague and uncertain, in that no provision was made for a disposition of the proceeds of sales of the trust property.

The bill further alleged, that, soon after the execution of the deed, the plaintiff left her husband and removed to Boston; that her husband had since deceased; that soon after his decease she demanded of the trustees that they should resign the trust and surrender her estate to her, which they refused to do; that the trustees thereafter sold all said real estate for the sum of $11,000, which they now hold in their hands as trustees; and that she had frequently demanded of them that they should pay and surrender to her all moneys and securities held by them.

The case was heard by *Field*, J., who was of opinion that the bill could not be maintained, but, at the request of the plaintiff, reported it for the consideration of the full court, in substance as follows:

The plaintiff's father gave her some $14,000, from time to time, while she was living with her husband in Colorado, for the purpose of having it invested in a home, in her name, for her family, which consisted of herself, her husband, and four children. She bought with it a house and lot, then bought another lot and built a house upon it, with the money. During the time she and her husband were in Colorado, her husband earned nothing for the support of the family, and she and the family were supported by money sent by her father, until his death in 1876. Her husband had persuaded her to mortgage both estates in Colorado for his debts, at high rates of interest. Charles E. Abbott, one

of the defendants, who had been an attorney for her father, went to Colorado in the spring or early summer of 1877, and saw the plaintiff; and, as a friend of the family, and at the request of her brother, ascertained the state of her property. The plaintiff wanted money to live on, as her husband contributed nothing. She and her husband were living together, but not happily; and she was so far under her husband's influence and control, whether from fear or otherwise, that she could not resist his requests to mortgage her property for his debts, and there was great danger that in this way it would all be lost. Abbott advised her to put her property in trust for herself and children in such a way that it would be out of her power to convey it, at her husband's request, and advised her to consult one Richardson, a disinterested and respectable attorney at law. She consulted Richardson, and informed him that she wished him to make a deed of trust to Charles E. Abbott and William E. Carleton, her brother, of all her real property, so that her husband could not influence her to mortgage or sell it, as he had a great influence over her which she could not resist. She said that she did not wish her husband to inherit her property in case of her death, or have any control over it, but that she wanted her children to have it. She seemed to be in great fear of her husband. Richardson made a deed, by the terms of which the property was conveyed to Carleton and Abbott "in trust for the sole and separate use, benefit, and behoof of the said Mary Keyes, her heirs and assigns forever, and to take, collect, and receive the rents, issues, and profits thereof, and apply the same to and for her sole and separate use." This deed was sent to Abbott in Boston, and was returned to Richardson with a draft of her brother's for six hundred dollars payable to the joint order of the plaintiff and Richardson, with instructions to strike out the words above quoted and to insert those which now appear in the deed. Richardson was also instructed to rewrite the deed of trust, and further modify it as he thought best, and not to indorse the draft of $600 until the deed was executed in the modified form. The deed was rewritten in the form in which it now is. The modification was substantially in accordance with the instructions, with a power inserted to appoint new trustees. The plaintiff executed the deed as modified. The instructions and the deed as modified

were carefully read over to her by Richardson, and explained to her, and the effect of the deed was explained to her.

Richardson testified as follows: "I did not think that she comprehended its purport very well, at least in respect to the placing of her property beyond her control, or in its being irrevocable by herself, or herself and the trustees, or the trustees. She said she wanted her children to have her property in case of her death, and that she did not wish Mr. Keyes to inherit any part of it; that she was afraid of her husband, and could not resist his importunities to sell or mortgage it for him." After much hesitation, the plaintiff executed the deed; it was recorded, delivered to her, and sent by her to Abbott, and she received the $600 sent by her brother. This was a loan made to her on condition that she would execute the deed.

The trustees accepted the trust, and have managed the property, have sold the real property, paid off the incumbrances, and now have about $11,000 well invested, and have paid the income to her account. The annual income now is $690.

At the time of executing the deed, the plaintiff contemplated the possibility of leaving her husband, but the possibility that her husband might die first was not mentioned by any one or considered. She also contemplated the possibility of a divorce from her husband, and had taken some steps with a view of procuring one. She left her husband to come East in 1877, and her husband died soon afterwards.

She testified that after she had signed the deed, but at the same interview at which she signed it, she asked Richardson whether she could get the property back if she wanted it, and he said he "supposed she could." There was no corroboration of this, and the judge was not convinced that he advised her that it could be revoked, and found that he did not. The judge also found that she did not think she could get back the property at her pleasure, without the assent of the trustees; that she knew that, while she had the control of the property, her husband could control the disposition she should make of it, and that it was mainly to prevent this that the property was put in trust, and that the contingency of her surviving her husband did not occur to her or to her advisers, and nothing was said about it;

that the main purpose was to save the property for herself and children, and put it out of her power to sell or encumber it at the solicitation or demand of her husband; that she thought that she and the trustees together could agree to change the disposition of the property; but did not find that she held this opinion from anything that was said to her by the trustees, or Richardson, or anybody else.

The judge further found, that no fraud or imposition was practised on her; that the deed was carefully read over to her; that there was no mistake, in the sense that she thought that the deed contained any other or different provisions than in fact it contained, and no accident, in the sense that anything was omitted which was intended to be put in; that the plaintiff was a woman of ordinary intelligence, who knew about as much and about as little of legal papers and of the management of property as most women who have been supported by rich fathers, and have never themselves done business or earned or managed money; that the contingency of her surviving her husband was not in her mind or in that of her advisers, and, if it had been, there was no means of determining what the provision, if any, would have been; that by her father's will she received about $60,000, which was placed in trust, to pay the income to her, and on her death to divide the principal among her four children; that the trust property was well invested by competent trustees under the will; and her whole income is about $3000 a year; that soon after her husband's death she asked the trustees for the property, and they, after consulting counsel, were informed that they could not convey it to her; and that she had not waived her rights, if she had any.

*G. Morrill*, for the plaintiff.

*S. Bancroft*, for Charles E. Abbott.

*G. H. Poor*, for the plaintiff's minor children.

MORTON, C. J. It is settled by the uniform course of the decisions in this Commonwealth that a voluntary settlement, fully executed by a person of sound mind, without any mistake, fraud, or undue influence, is binding upon the settler, and cannot be revoked, except so far as a power of revocation has been reserved in the deed. *Viney* v. *Abbott*, 109 Mass. 300. *Sewall* v. *Roberts*, 115 Mass. 262, and cases cited.

In the case before us, the plaintiff, acting deliberately and under the advice of counsel, executed the deed of settlement, and there is no pretence of any fraud, collusion, or undue influence. The deed contains no power of revocation, and it is clear that the power of revocation was intentionally omitted. As first drafted, the deed created a dry trust in favor of the settler, which probably could have been revoked by her at any time. But if she had retained a power of revocation, it would have defeated one of the principal objects of the settlement, which was to protect her from the threats, or importunities, or influence of her husband, and therefore the deed was altered to its present form. Both parties understood that she was not to have the power to revoke it. It is not, therefore, a case like some of those cited by the plaintiff, where both parties supposed the settlement to be revocable, and the power to revoke was omitted by mistake. See *Aylsworth* v. *Whitcomb*, 12 R. I. 298 ; *Garnsey* v. *Mundy*, 9 C. E. Green, 243, and cases cited.

The justice who heard this case has found that no fraud or imposition was practised on her; that the deed was carefully read over to her; that there was no mistake, in the sense that she thought the deed contained any other or different provision than in fact it contained, and no accident, in the sense that anything was omitted which was intended to be put in ; and also that the contingency of her surviving her husband was not in her mind or in that of her advisers, and, if it had been, there was no means of determining what the provision, if any, would have been. From these findings, it is clear that there was no mistake, in the sense that she wrongly apprehended the contents of the deed. The most that can be said is, that she did not, at the time she executed the deed, anticipate or have in her mind what would be its legal effect in the contingency of her husband's dying before her. She did not, at the time, think of this contingency, but this is not a mistake which will justify setting aside a settlement, especially when it is not shown that, if this contingency had been in her mind, she would have made a deed in any respect different. But this was not a purely voluntary settlement. It appears that she was in financial difficulties and in present need of money, and that her brother advanced her, by way of loan, $600, as a part of the transaction, and on the condition

that she would execute this deed of trust. It seems to have been a family arrangement to save her property for the benefit of her children, and to protect it, not only from the demands of her husband, but possibly from her own improvidence.

It may be that the fact that there was this pecuniary consideration would not prevent a court of equity from setting aside the settlement, upon proof of fraud or concealment, or upon proof of any material misapprehension on her part of facts which, if known and called to her attention, would have led to a settlement of a different character. But it throws some light upon the transaction, and tends to show that her failure to think of the contingency of her husband's death was immaterial, and that, if she had thought of it, there would have been no change in the provisions of the deed. We are of opinion that the plaintiff does not show sufficient cause for setting aside the settlement, voluntarily and fairly made by her. *Bill dismissed.*