ANNIE L. REEL, Respondent, v. HANSBORO STATE BANK, et al., and, Beulah H. Estes, Sarah L. Knox, Dorothy J. Knox, and F. V. Keeling, as Executor of the Estate of Margaret E. Ward, Deceased, Appellants.

(201 N. W. 861.)

**Gifts — gift causa mortis does not pass irrevocable title until death of donor, while gift inter vivos vests irrevocable title on delivery.**

1. A gift *causa mortis* does not pass an irrevocable title until the death of the donor; a gift *inter vivos* vests an irrevocable title *on delivery*.

**Gifts — when a gift is a "gift inter vivos" stated.**

2. The test to be applied in determining whether a gift is one *inter vivos* is whether it was made with the intent that it take effect immediately and irrevocably. If a gift *inter vivos*, it must have been fully executed by an unconditional delivery, actual or symbolical, having regard to the nature of the property and the circumstances.

**Gifts — gift held neither inter vivos or causa mortis.**

3. For reasons stated in the opinion, gift held neither one *inter vivos* nor *causa mortis*.

**Trusts — created in manner not contravening statutes will be enforced in equity though consideration voluntary; equity will not aid incomplete transaction to enforce that which rests only in unexecuted intention; court of equity will enforce actual settlement made for vesting estate in trustee when such intention clearly appears.**

4. Whether a trust has been created is primarily a question of intention. What the law requires in order to effect a divestiture of the beneficial interest must be done by the donor. If a trust has been created by a sufficient declaration, in a manner not contravening the statutes, it will be enforced in equity, tho the consideration be wholly voluntary. If the gift be imperfect and something remains to be done by the donor to perfect an intention to make a gift or create a trust, a court of equity leaves the parties where it finds them. It will not aid in completing an incomplete transaction, or in enforcing that which rests only in an unexecuted intention. When, however, there is an actual settlement made for vesting the estate in a trustee and an intention so to do clearly and unequivocally appears, a court of equity will enforce it.

Note.—(1) Irrevocability of title in gift inter vivos or causa mortis, see 12 R. C. L. 931; 2 R. C. L. Supp. 1512; 5 R. C. L. Supp. 664.

(2) Requisites of gift inter vivos, see 12 R. C. L. 933; 2 R. C. L. Supp. 1512; 4 R. C. L. Supp. 778; 5 R. C. L. Supp. 664.

(4) Conversion by equity of imperfect gift into trust, see 26 R. C. L. 1185.

**Trusts — equity will refuse to impute trust where one was not contemplated.**

5. Where the donor attempts to part with dominion over his property in a manner sanctioned by law, such as by assignment, gift, or the like, which, if fully pursued, would effectuate a complete transfer of the title, equity will compel the claimant to stand on his legal rights, and, notwithstanding a clearly expressed purpose to part with the property, will refuse to impute a trust where one was not contemplated.

**Trusts — donor's possession for use and enjoyment during her lifetime does not divest transaction of its trust character; that trust cannot be administered or settled until after the death of settlor, on account of reservation of interest, does not affect validity.**

6. If the donor intends to and does, in fact, part with all interest in the property, possession for use and enjoyment during her lifetime does not divest the transaction of its trust character; and the fact that the trust sought to be created can not be administered, or settled, until after the death of the settlor, on account of the reservation of interest, does not affect the validity of the trust.

**Trusts — completed trust is revocable only by consent of all cestuis; act of donor after completion of gift does not affect title of donee.**

7. A completed trust, without reservation of power of revocation, can only be revoked by consent of all the cestuis; and, tho the trust be voluntary, no act of the donor after the completed gift, not consented to or acquiesced in by the donee, will affect the title in the latter.

**Trusts — trust not revoked by acts or conveyances consistent with continued existence of trust.**

8. A trust is not revoked by acts or conveyances consistent with its continued existence.

Opinion filed December 31, 1924.

Gifts, 28 C. J. § 5 p. 622 n. 31; § 6 p. 622 n. 38; § 21 p. 630 n. 66; § 92 p. 684 n. 61; § 100 p. 689 n. 8. Trusts, 39 Cyc. p. 42 n. 25; p. 77 n. 32; p. 92 n. 29; p. 93 n. 34; p. 95 n. 40; p. 110 n. 47; p. 111 n. 53.

Appeal from the District Court of Towner County, *Buttz,* J. Affirmed.

*Traynor & Traynor (Joseph R. Palmer* and *L. Edgar Estes* of counsel), for appellants.

"Expressions are sometimes found in the books to the effect that gifts *causa mortis* are not favored in law because of the opportunity which they afford for the perpetration of frauds upon the estates of

deceased persons by means of perjury and false swearing; but gifts of the character of those in question are not to be held contrary to public policy, nor do they rest under the disfavor of the law, when the facts are clearly and satisfactorily shown which make it appear that they were freely and intelligently made. Ellis v. Secor, 31 Mich. 185. While every case must be brought within the general rule upon the points essential to such a gift, yet, as the circumstances under which donations *mortis causa* are made must of necessity be infinite in variety, each case must be determined upon its own peculiar facts and circumstances. Dickeschild v. Bank, 28 W. Va. 341; Kiff v. Weaver, 94 N. C. 274."

"The chief distinction between gifts *inter vivos* and those of the character here in question is that, while the former are consummated by delivery the title to the property is irrevocably vested, while in the latter the title is ambulatory and inchoate until the death of the donor occurs." Devol v. Dye, 24 N. E. 247.

"Where the owner of property in the hands of another directs the depositary to deliver it to a third person as a gift, such direction, if executed, constitutes a valid delivery. If the depositary in such case refuses or fails to make such delivery, it has been held that the gift fails." 28 C. J. 639.

"Where, however, the donor's retention of possession is inconsistent, with the idea of an executed gift, the gift fails." 28 C. J. 641.

"The requisites of a valid gift *inter vivos* are that there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect at once, and fully executed by delivery of the property by the donor and acceptance thereof by the donee." Goelz v. Bank, 31 Ind. App. 67, 67 N. E. 232.

"Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. A court of equity will not interfere and give effect to a gift that is inchoate and incomplete." Smith v. Dorsey, 38 Ind. 451, 10 Am. Rep. 118.

*Cuthbert & Adamson,* for respondent.

"A complete gift *inter vivos* may be made by transfer of property to a trustee for the benefit of the donee." Hulet v. R. Co. 14 N. D. 209.

"It has been frequently held that 'a gift of a bank deposit may be effected though there is no change of credit on the books of the bank

by substantial acts of the donor tending to carry the gift into effect and give the donee dominion over such deposit.' 83 Minn. 54, 85 N. W. 915, 85 Am. St. Rep. 454—the same rule prevails where the gift is one *inter vivos* in trust and the trustee is given dominion over the deposit. Any substantial act on the part of the owner of the property tending to carry the gift into effect and give the donee dominion over the property so that she can appropriate it to her own use supports such gifts." 2 Schouler, Personal Property, 92; Fletcher v. Fletcher, 55 Vt. 325; Ross v. Draper, 55 Vt. 404, 45 Am. Rep. 624; Malone Estate, 13 Phila. 313; Re Schmidt, 65 Minn. 256.

"A complete gift *inter vivos* may be made by transfer of property to a trustee for the benefit of the donee." 107 N. W. 935; 24 Century Dig. § 36.

"*No particular form of words is required to create a trust.*" Foster v. Murphy (Neb.) 107 N. W. 843; Hulet v. R. Co. 14 N. D. 209. We invite the court's attention to (Iowa) 115 N. W. 590.

Delivery of gift *inter vivos* may be either actual, constructive or symbolical. Pyle v. East (Iowa) 155 N. W. 283.

"If a gift *inter vivos* is absolute the mere postponement of the enjoyment until the death of the donor is immaterial and will not defeat the gift." Tucker v. Tucker (Iowa) 116 N. W. 119.

"A valid gift may be made so that the grantor shall retain the use of the property for life." Mollison v. Rittgers (Iowa) 118 N. W. 512; McNally v. McAndrew, 73 N. W. 316.

"It is immaterial that there is a postponement of the time of enjoyment of a gift until after the donor's death." Abegg v. Hirst (Iowa) 122 N. W. 838.

—Where the nature of the subject or the circumstances of the gift prevent or excuse an actual manual delivery there must be a constructive or symbolic delivery to pass title. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940.

JOHNSON, J. Plaintiff bases her cause of action upon the following facts:

The plaintiff's sister, Mrs. M. E. Ward, lived in Elsberry, Missouri, up to the time of her death, on April 11, 1923. She had, for some time, maintained a time deposit in the sum of $3305.00 in the defend-

ant bank. On February 15, 1923, the certificate of deposit matured. After the 1st of January, 1923, and for some months prior thereto, Mrs. Ward's health had been failing. She was 81 years of age. In February, 1923, in a conversation with one Blackorby, Mrs. Ward stated that "she wanted to give the property she had up here (N. D.) to her sister at Devils Lake, Mrs. Reel (plaintiff) and what she had down in Missouri to her sisters there." She also told Blackorby that she had money in a bank in North Dakota; that she had heart trouble, and was not expected to live. She stated to this witness that "she had ordered a certificate of deposit made to her sister, Mrs. Reel." A will was made by Mrs. Ward after this conversation and subsequent to the instructions relating to the certificate of deposit. The old certificate was sent to the defendant bank for renewal, but owing to illness in the family of Blackorby, the managing officer of the defendant bank, the certificate was not immediately renewed. It lay in a drawer in the bank many days without attention. Thereafter Mrs. Ward wrote the following letter in longhand:

"I sent you the certificate of deposit the 21st (meaning the 12th of Feb.) 1923 and have not heard from it. Getting uneasy about it, although I know the trains have not been regular since the blizzard. If you have overlooked it, you be sure to send the interest to Elsberry, Mo., but you make the certificate to Mrs. A. L. Reel, Devils Lake, North Dakota, so if anything happens to me she can draw it. I have been quite sick, a little better now. You had to give up your mother. You have my sympathy. I know what that is. I hope your father is improving. Your friend, M. E. Ward."

Inadvertently, the instructions of Mrs. Ward in this regard were not complied with and a new certificate was prepared by a clerk in the bank, to Mrs. Ward as payee. This certificate was not delivered to Mrs. Reel, but was mailed to Mrs. Ward. It was issued on February 24, 1923, but dated back to February 15, the maturity date of the old certificate. Mrs. Ward received the certificate some time before her death, placed it in her safety deposit box and delivered the box to one Dr. Keeling, her attending physician, to be put in a bank at Elsberry for safe keeping. Keeling is the executor of the will.

The will is dated February 13, 1923, and in it the testatrix devises all her real property in Missouri to the defendant Beulah Estes, a

niece; and all the remainder of her estate, real and personal, to her three sisters, by name, including plaintiff, for their natural lives, the same to revert to Beulah Estes at the time of their death. Beulah Estes waited on Mrs. Ward in her last illness.

The plaintiff contends that she is the absolute owner of the fund in the Hansboro State Bank; that the letter, quoted supra, constitutes an absolute assignment or gift to her of that fund; that the transaction was a gift *inter vivos;* that it was the intention of the decedent, as expressed in this letter and in conversations, to make plaintiff the present owner of the deposit; and that Mrs. Ward retained no right in, or control over, the principal, reserving only the right to the interest; and that a trust was created. The defendants, other than the bank—the bank has not appealed—maintain that a gift of the deposit to the plaintiff was never consummated for want of delivery; that the bank, or its managing officer Blackorby, did not become a trustee of the fund for the benefit of the plaintiff; and that there was no acceptance of the gift by the plaintiff before Mrs. Ward changed her mind and revoked the same. The defendants, in effect, contend that the transaction constitutes at most a gift *causa mortis;* and that it was revoked before death.

The distinction between a gift *inter vivos* and a gift *causa mortis* is that the latter does not pass an irrevocable title until the death of the donor; § 5543, Comp. Laws 1913; a gift.*inter vivos* vests an irrevocable title *on delivery;* §§ 5539, 5540, Comp. Laws 1913.

The test to be applied in determining whether a gift is one *inter vivos* is whether it was made with the intent that it take effect immediately and irrevocably. If a gift *inter vivos,* it must have been fully executed by an unconditional delivery, actual or symbolical, having regard to the nature of the property and the circumstances. The fact that the donor is *in extremis* at the time the gift is made, does not, it has been held, necessarily determine its character as a gift *causa mortis.* If, as we have said, it was made with the intention that it should be immediately and irrevocably effective, with an intention to part both with possession and dominion, and was accompanied by a complete and unconditional delivery, it may, notwithstanding the donor is *in extremis,* be a gift *inter vivos.* Gilligan v. Lord, 51 Conn. 562; Coffey v. Coffey, 179 Ill. 283, 53 N. E. 590. By statute in this state,

a gift made during the last illness of the donor, or under circumstances which would naturally impress him with an expectation of speedy death, is presumed to be a gift *causa mortis*. Comp. Laws 1913, § 5542.

There is a difference clearly recognized in the decisions between a gift inter vivos and a declaration of trust. Baker v. Baker, 123 Md. 32, 90 Atl. 776. In the case of a declaration of trust the legal title may be retained by the donor or transferred to a third person with the equitable title vesting in the cestui que trust. An intention to make a gift *in praesenti* ordinarily excludes the idea of a declaration of trust. Ashman's Estate, 223 Pa. 543, 72 Atl. 899; 28 C. J. 624.

We are of the opinion that the record presents neither a case of a gift *inter vivos* nor one of *causa mortis*. There was not such delivery of the evidence of the debt—the certificate of deposit—as will satisfy the rule as stated above and laid down in Ramsdell v. Warner, 48 N. D. 96, 183 N. W. 281. The evidence is wholly insufficient to support the conclusion that Mrs. Ward was in immediate fear or contemplation of death, at the time she wrote Exhibit 2, or even when she talked with the witness Blackorby. She thought the end might not be far away, but it does not appear that she thought it was imminent. Though ill, she was not confined to her bed when the will was made.

It is contended that a voluntary, irrevocable trust was created. Section 6277, Comp. Laws 1913, is as follows:

"Subject to the provisions of § 5364 a voluntary trust is created as to the trustor and beneficiary by any words or acts of the trustor, indicating with reasonable certainty:

"1. An intention on the part of the trustor to create a trust; and,

"2. The subject, purpose and beneficiary of the trust."

Section 6278, Comp. Laws 1913, provides:

"Subject to the provisions of § 5364, a voluntary trust is created as to the trustee by any words or acts of his, indicating with reasonable certainty:

"1. His acceptance of the trust or his acknowledgment, made upon sufficient consideration, of its existence; and,

"2. The subject, purpose and beneficiary of the trust."

A trust in personal property is not within the statute of fraud and may be proved by parol; Berry v. Evendon, 14 N. D. 1, 8, 103 N. W.

748; such a trust may rest partly in writing and partly in parol. Porter v. Bank of Rutland, 19 Vt. 410.

We must first determine whether Mrs. Ward intended to make a present transfer of her deposit to Mrs. Reel. This is a question of fact. If we find that such was her intention we must then decide whether she did everything the law requires to make such intention effective. This is a question of law.

The meaning and intention of the author of Exhibit 2 can best be ascertained by a consideration of her condition, what she said at or about the time it was written, and all the circumstances. She was about 81 years of age, and had been suffering from a heart affliction from which she expected to die within a short time. She had been on intimate terms with the plaintiff; they had regularly corresponded during all the years of their separation. Each knew, doubtless fully, the circumstances of the other. Mrs. Ward had had a comparatively small sum of money on deposit in two different banks in North Dakota—thru personal friendship and acquaintance with some of the bank officers who had formerly lived near her home. She writes the letter—Ex. 2—which is the most unequivocal evidence of her intention either to give the deposit in North Dakota to the plaintiff, or to create a trust with Mrs. Reel as the beneficiary, found in the record. The letter is of a type that frequently—too frequently—finds its way into the courts. There is no mention of a *gift,* or of a *trust,* eo nomine. The document is wholly informal; it is a letter to a friend who had advised her about her business affairs and kept her money faithfully. No thought entered the mind of this old lady, who was then in the shadow of an incurable malady, that her letter would ever become the subject of acrimonious and learned controversy in the courts where every word and phrase would be put to the severe test of literary or legal analysis. She had a definite purpose she desired to accomplish and she wrote a letter expressing that purpose with a clarity that left no room for doubt as to her intention, and the recipient, had he not been absent from his post of duty in the bank on account of a fatal illness in his family, would have issued the certificate to the plaintiff, and there would have been no lawsuit. He also would have understood, had he seen her letter when it came, that the interest was to be transmitted to the writer at Elsberry,

Missouri. Can there be any question about the real intention of Mrs. Ward? We think not. In the light of what she said to Blackorby, the letter was an express unequivocal, *in praesenti* declaration that thereafter the bank should hold the deposit for Mrs. Reel as owner, but pay interest to Mrs. Ward. She discussed this matter with her old friend Abner Blackorby, whom she had known for 50 or 60 years. The conversation took place after the instructions about the certificate had been given. Mrs. Ward said to this witness, speaking of her property, that "she would divide it and she wanted to *give* the property she had up here (the deposit in suit) to her sister in Devils Lake, Mrs. Reel (plaintiff), and what she had in Missouri to her sisters there" (defendants). Witness further says that Mrs. Ward told him on this occasion that "she had ordered the certificate of deposit made to her sister, Mrs. Reel" (plaintiff). This conversation took place "somewhere near the first and middle of February" (1923). Such is her own statement of her intention and of her purpose in writing Exhibit 2. She intended to part with all control over the principal—to put it outright in the name of the beneficiary as owner, but with a reservation of the interest for her own use. With full title to the principal in her sister, the transfer could not be defeated because of a testamentary character. She wanted to give the principal to Mrs. Reel "so if anything happens to me she can draw it." "Equity, discarding unmeaning and useless forms, will look to the substance of the act done, and the intention with which it was done, and carry out the intention." Otis v. Beckwith, 49 Ill. 121. Notice to or acceptance by, Mrs. Reel was unnecessary. 1 Perry, Trusts, § 97; Clark v. Callahan, 10 L.R.A.(N.S.) 616, and note (105 Md. 600, 66 Atl. 618, 12 Ann. Cas. 162); 39 Cyc. 79.

Did she do everything the law required to make her purpose effective? We think so. Exhibit 2 is a complete release of the debtor bank from its obligation to pay Mrs. Ward, and a substitution of Mrs. Reel as the creditor, with instructions to the debtor to issue the new evidence of the indebtedness to her sister. With this order or release, she surrendered the old certificate—the evidence of her ownership of the debt. The situation is not materially different from what it would have been had Mrs. Ward endorsed the certificate before maturity to Mrs. Reel, with the statement that she did this

because she wished to give the principal to her sister, while reserving the use—interest—herself. As in Eaton v. Cook, 25 N. J. Eq. 55, there was a cancellation of the debt to her, the creating of a trust for her sister. To execute her purpose, nothing further need be done by Mrs. Ward, or her representative. Her order is in writing and signed by her. The court is not called upon to complete an executory intention or to enforce an unexecuted gift. In view of the importance of the question, a somewhat extended reference to the authorities is justified.

Whether a trust has been created is primarily a question of intention. What the law requires in order to effect a divestiture of the beneficial interest must be done by the donor. Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446. If a trust has been created by a sufficient declaration, in a manner not contravening the statutes, it will be enforced in equity, tho the consideration be wholly voluntary; on the other hand, an executory agreement upon a voluntary consideration will not be enforced. In determining whether an arrangement is executed or executory, the primary question is whether the relation of trustee and cestui que trust is established; that is, is the transaction complete or incomplete? If the gift be imperfect and something remains to be done by the donor to perfect an intention to make a gift or create a trust, a court of equity leaves the parties where it finds them. It will not aid a volunteer in completing an incomplete transaction, or in enforcing that which rests only in an unexecuted intention. Where the donor attempts to part with dominion over his property in a manner sanctioned by law, such as by assignment, gift, or the like, which, if fully pursued, would effectuate a complete transfer of the title, equity will compel the claimant to stand on his legal rights, and notwithstanding a clearly expressed purpose to part with the property, will refuse to impute a trust where one was not contemplated. 39 Cyc. 75. When, however, there is an actual settlement made for vesting the estate in a trustee and an intention so to do clearly and unequivocally appears, a court of equity will enforce it. A complete divestiture of an equitable title may result from an unequivocal declaration to that effect, altho the legal title has not been disposed of. Lane v. Ewing, 31 Mo. 75, 77 Am. Dec. 632, 635, 636. Until the intention to create the trust is completely executed

by some act or acts creating a completed trust, there is a *locus poenitentiae.*

"But if the trust is *perfectly created,* so that the donor or settlor has nothing more to do, and the person seeking to enforce it has need of no further conveyances from the settlor, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect at the suit of a party interested, altho it was without consideration, and the possession of the property was not changed. This will be true altho the person who is intended to be benefited has no knowledge of the act at the time it is done, provided he accepts and ratifies it when he is notified." 1 Perry, Trusts, § 98, p. 116.

"If a voluntary trust for the benefit, wholly or partly, of some person or persons other than the grantor is once perfectly created, and the relation of trustee and cestui que trust is once established, it will be enforced altho the settlor has destroyed the deed, or has attempted to revoke it by making a second voluntary settlement of the same property, or otherwise, or if the estate by some accident, afterwards becomes revested in the settlor . . . it is perfectly clear that where the settlor did not misapprehend the contents of the deed and there was no fraud or undue influence, and no power of revocation was reserved, the settlor is bound, tho some contingency was forgotten and unprovided for." 1 Perry, Trusts, § 104, pp. 130, 134.

"It is upon legal and equitable principles, we apprehend, clear that a person *sui juris,* acting freely and fairly, and with sufficient knowledge, ought to have, and has it in his power to make in a binding and effectual manner a voluntary gift of any part of his property, whether capable or incapable of manual delivery, whether in possession or reversionary, or however circumstanced." 1 Perry, Trusts, § 101, p. 126, quoted from Lord Justice K. Bruce in Kekewich v. Manning, 1 De G. M. & G. 187, 42 Eng. Reprint, 524.

If the trust was fully created, the receipt and retention of the certificate of deposit, executed by mistake in the name of Mrs. Ward, could not result in a revocation. Mrs. Ward could have had the certificate in her possession for the purpose of collecting interest, and notwithstanding such naked possession a valid and enforceable trust existed. If she intended to and did, in fact, part with all interest

in the property, possession for use or enjoyment during her lifetime would not divest the transaction of its trust character. Jones v. Nicholas, 151 Iowa, 362, 130 N. W. 125. The fact that the trust sought to be created would not be administered, or settled, until after the death of Mrs. Ward, on account of the reservation of interest, would not affect the validity of the trust. Ibid. In a note to Ellison v. Ellison, reported in 6 Ves. Jr. 656, 31 Eng. Reprint, 1243 decided in 1802, in White & T. Lead. Cas. in Eq. 8th ed. vol. 2, p. 883, it is said:

"A complete executed trust, either by actual transfer or assignment or declaration of trust, can not, in the absence of a power reserved for that purpose to the settlor, or in the absence of fraud, mistake, etc., be revoked by him. And it is immaterial that the legal estate, by accident or breach of trust, gets back into the hands of the settlor, as he would simply take it as a trustee." The cases cited sustain the text. This is also the rule in the United States. "A completed trust without reservation of power of revocation can only be revoked by consent of all the cestuis." 1 Perry, Trusts, 6th ed. § 104. See other citations, supra. "Any act of the donor after the completed gift, not consented to or acquiesced in by the donee, will not affect the title in the latter." Jones v. Nicholas, supra. This is true, tho the trust be voluntary. Tucker v. Tucker, 138 Iowa, 344, 116 N. W. 119; Willis v. Smith, 91 N. Y. 297; Keyes v. Carleton, 141 Mass. 45, 55 Am. Rep. 446, 6 N. E. 524; Minor v. Rogers, 40 Conn. 512, 16 Am. Rep. 69; Farleigh v. Cadman, 159 N. Y. 169, 53 N. E. 808; Stoehr v. Miller (C. C. A. 2d), 296 Fed. 432; 26 R. C. L. 1207.

In Barkley v. Lane, 6 Bush, 587, Lane was the owner of two promissory notes. He endorsed on one of them an unsigned statement to the effect that he gave both instruments free of all charges to his daughters, if not paid before his death; he reserved interest to himself during his lifetime. There was no formal declaration of a trust. He retained possession of the notes at all times until his death. The daughters brought suit to recover the principal of the debt, claiming that a trust was created. Their contention was sustained. The court say: "But it is insisted for the appellants that the facts were insufficient to constitute a parol trust, enforceable in a court of equity.

As the subject of the trust sought to be established in this case was personal estate only, no writing was necessary to transfer it, and the trust could have been created in parol and proved by parol evidence. Nor was it essential to the validity of the trust that a trustee be formally appointed, as the owner of the property may convert himself into a trustee and hold it for the benefit of another without transmuting the possession." In Roche v. George, 93 Ky. 609, 20 S. W. 1039, the Court of Appeals of Kentucky, in dealing with a similar situation, quotes from a former Kentucky decision as follows:

"In seeking to enforce a trust of this character, the donee must show that nothing has been left undone by the donor necessary to create the trust; and, if nothing is required of the court but to give effect to the trust as executed, it will be carried into effect, altho the possession of the property was not changed."

The principle is not that the assignor or trustor must necessarily have done everything in his power, but rather, if there has been an actual and sufficient declaration of a trust, notwithstanding the trustor may not have done all that he could like giving notice to the beneficiary or, in some circumstances, part with the possession, yet the interest may effectually pass as between the donor and the donee. It is, of course, true that the donor must do everything the law requires in order to create a trust by voluntary declaration; it is not true, without important qualifications, that he must leave nothing undone that he could do before the declaration of trust is legally complete. In Eaton v. Cook, 25 N. J. Eq. 55, the creditor cancelled the bond, and gave it to her daughter and her heirs in the following manner:

"I hereby cancel the above bond and give it voluntarily to Mrs. Janet Cook and her heirs."

The court held that a trust of the debt resulted for the benefit of the children of Mrs. Cook, wife of defendant.

In Pye's Case, 18 Ves. Jr. 149, 34 Eng. Reprint, 271, money was transmitted to an agent in France with instructions to purchase an annuity for a lady, at that time deranged. The agent mistakenly purchased the annuity in the name of the principal. Thereafter the principal sent the agent his power of attorney to transfer the annuity as originally intended. Before this was done, however, the principal

died. Lord Eldon held that a complete declaration of trust was proved.

In Paterson v. Murphy, 11 Hare, 88, 68 Eng. Reprint, 1198 (1853) it appeared that the mortgagee signed a memorandum directing the mortgagor to pay a part of the debt in installments to herself and to invest the remainder in consols for the benefit of the children of another. Thereafter she attempted to change her mind, signed another memorandum directing that all the payments be made to herself. Both memoranda were made by the mortgagor under the direction of the mortgagee. It was held that the first memorandum constituted a voluntary declaration of trust, irrevocable by the mortgagee, for the benefit of the children named, and that the subsequent memorandum was wholly ineffective, as against the claims of the beneficiaries named in the first declaration of trust. No power of revocation was reserved.

In Moore v. Darton (1851) 4 De G. & S. M. 517, 64 Eng. Reprint, 938, a receipt in the following form was held a sufficient declaration of trust:

"Received the 22nd day of October, 1843, of Miss Darton, for the use of Ann Dye, 100 pounds to be paid to her at Miss Darton's decease, but the interest at 4% to be paid to Miss Darton. William Moore. (I approve of the above). Betty Darton."

In Gibert v. Overton (1864) 2 Hem. & M. 110, 71 Eng. Reprint, 402, the doctrine of Ellison v. Ellison is reiterated and it is said that the circumstance "that the settlor afterwards got in the legal estate did not displace the trust which had been effectually created."

The fact that there was no express acceptance of the trust or recognition of the transfer by the bank, is of no importance under the circumstances.

The defendants contend that there is evidence of a change of mind and of revocation. If a complete declaration of trust was made by Mrs. Ward, the authorities are uniform to the effect that it was not in her power subsequently to revoke it. In any event the evidence is insufficient to show an intention to revoke. As a whole, the conduct of Mrs. Ward is, upon the record, at least as consistent with an intention to continue as with one to terminate the trust. "On the other hand, a trust is not revoked by acts or conveyances consistent

with its continued existence." 39 Cyc. 95. The donor gave unequivo-
cal and explicit instructions to her debtor to issue a certificate of de-
posit payable to plaintiff, that is, to substitute Mrs. Reel for Mrs.
Ward as the creditor. The bank was released from its obligation to
pay Mrs. Ward. She did this because she said she desired to give
the principal to her sister. Thru mistake, her instructions were not
followed and the evidence of the indebtedness was executed to Mrs.
Ward, as the creditor, mailed to and received by her while she was
ill. She died less than two months afterwards. There is no testi-
mony that she ever said a word indicating a change of heart with
respect to the disposition of the deposit in the bank at Hansboro,
North Dakota. It is inferred from the fact that she put the certificate
in her safety deposit box that she abandoned her purpose to make this
gift to her sister. To imply a revocation from the mistake of the
bank, the debtor, without a word from Mrs. Ward indicating that she
had abandoned her unequivocally expressed purpose, would be doubt-
ful justice to either the living or the dead. It does not even appear
that Mrs. Ward noticed the error, or ever knew that her instructions
had not been complied with. For aught that appears to the contrary,
she may have supposed that her directions had been followed and
that the certificate she received and put away was, in fact, payable
to her sister; or that the error was quite immaterial. She was suffer-
ing from a fatal illness; she had given explicit instructions to an old
friend in whom she evidently reposed absolute confidence; she had
definitely and unequivocally expressed a purpose which those instruc-
tions, if obeyed, would have fully realized; she thought that the end
was near, but how near was uncertain. The court should not be
astute in construing equivocal conduct of one in the circumstances of
Mrs. Ward, unaccompanied by declarations, oral or written, as a rev-
ocation or abandonment of a purpose unequivocally expressed, orally
and in her own handwriting, a short time before, to provide for a
sister with whom she had sustained the best of relations for a life-
time. Had she assumed without examining the certificate that her
instructions had been followed, her retention thereof was natural
and wholly consistent with her declared purpose to collect the in-
terest. When the certificate came to her, she had made her will and it
is not improbable that her mind was at ease because of a conscious-

ness that she had put her house in order; that her thoughts had come to be occupied with other things.

There is one circumstance, it is said, that suggests a change of purpose—the making of a will that gave the personal property in Missouri in equal shares to her sisters, including the plaintiff, contrary to her intention, as expressed to witness Blackorby, to give her property in that state to her sisters there and the money in the defendant bank to Mrs. Reel. Of course, all the facts and circumstances must be considered in ascertaining the intention of Mrs. Ward. There is nothing in the evidence or in the record that shows the nature or value of her estate in Missouri. The fact that she provided in her will that Mrs. Reel should share in the personal estate equally with the other sisters is not inconsistent with her declared purpose to give Mrs. Reel the deposit in the North Dakota bank.

The judgment of the trial court is affirmed.

Bronson, Ch. J., and Nuessle, Birdzell, and Christianson, JJ., concur.